# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 125 | **DATE** | 7/3/2003 |
| **CASE TITLE** | Berger, et al. vs. Axa Network, LLC, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum opinion and Order granting in part and denying in part defendant's motion to dismiss. Counts II and III of plaintiff's complaint are dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **3** number of notices | **Document Number** |
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | JUL 0 7 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 7/3/03 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**TERRY BERGER and DONALD LAXTON,**
　　　　　　　　Plaintiffs,

v.                                        No. 03 C 125

**AXA NETWORK, LLC, and THE EQUITABLE
LIFE ASSURANCE SOCIETY OF THE UNITED
STATES,**
　　　　　　　　Defendants.

**DOCKETED**

**JUL 0 7 2003**

## MEMORANDUM OPINION AND ORDER

Plaintiffs Terry Berger and Donald Laxton are insurance agents who sold insurance for defendants AXA Network, LLC and The Equitable Life Assurance Society of the United States (collectively "Equitable"). Mr. Berger and Mr. Laxton filed a three-count complaint against Equitable, alleging that a policy implemented by Equitable regarding classification of employees based on sales violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. §§ 3101-3128, and constituted a breach of contract. Equitable seeks to dismiss the complaint, arguing that plaintiffs have not exhausted their administrative remedies under ERISA, that there is no private right of action under FICA, and that plaintiffs have failed to state a claim for breach of contract. I grant the motion in part, dismissing plaintiffs' FICA and breach of contract claims.

On a motion to dismiss, I take all allegations in the complaint as true. *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 401 (7th Cir. 1996). The facts as alleged by plaintiffs are as follows. Equitable sells life insurance through a network of agencies, district managers, and individual agents. Some members of the sales force are designated "statutory employees," meaning that they are full-time life insurance salesmen under FICA. *See* 26 U.S.C. § 3121(d)(3)(B) ("For purposes of this chapter, the term 'employee' means ... any individual ... who performs services for remuneration for any person ... as a full-time life insurance salesman."). Prior to 1999, salesmen who entered into 14th Edition Agent Contracts (the contracts generally used by agents who remain with Equitable three years or more) were asked to complete a FICA form indicating whether they intended to devote their principal business activity to the solicitation of life insurance or annuity contracts for Equitable. Equitable applied a presumption that agents under the 14th Edition contract who had submitted an appropriate FICA form were statutory employees.

Beginning in 1999, Equitable changed its policy regarding classification of statutory employees, indicating that agents under 14th Edition contracts who failed to meet a specified sales goal during the preceding year were no longer considered statutory employees. An agent removed from statutory employee status faced two consequences. First, agents who were no longer statutory

2

employees became ineligible for benefits under Equitable's benefits program ("Plan"). Second, Equitable stopped withholding those agents' share of FICA tax and ceased contributing the employer's share (thus making the agents responsible for paying the entire tax amount).

## Count I: ERISA

Plaintiffs first allege that Equitable reclassified agents from "statutory employee" to "self-employed" for the purpose of interfering with the attainment of rights under the Plan in violation of ERISA section 510. 29 U.S.C. § 1140. Equitable argues that plaintiffs' ERISA claim does not fall under section 510, but rather is a run of the mill benefits claim properly brought under section 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B). That is not the case. Plaintiffs' complaint properly states a violation of section 510.

Section 510 indicates that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. The Seventh Circuit has noted that section 510 was clearly designed to protect the employment relationship against actions intended to interfere with the attainment of a pension right. *Deeming v. Am. Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990).

3

Thus, "a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way." *Id.* That is exactly what plaintiffs have alleged here. They allege that Equitable enacted a policy that reclassified their employment status for the purpose of interfering with the attainment of rights under the Plan. This states a claim for violation of section 510. *Cf. Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554 (11th Cir. 1997) (holding that a genuine issue of fact as to whether an employer reclassified salaried employees as independent contractors with the intent to interfere with the employees' ERISA benefits defeated employer's motion for summary judgment on section 510 claim). *See also McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665, 669 (7th Cir. 1993) ("[W]e must be mindful that § 510 protects the employee not only against the classical forms of employer harassment that might occasion the loss of benefits, but also against the more atypical forms of employer misconduct that can produce the same result.").

Suits alleging violations of section 510 may be brought by participants and beneficiaries through section 502(a)(3). 29 U.S.C. § 1132(a)(3); *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 544 (7th Cir. 1994). This section allows a participant or beneficiary to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter ... or to obtain other

4

appropriate equitable relief to redress such violations." The Supreme Court has noted that this section is a catchall provision, offering appropriate relief for violations that section 502 does not otherwise adequately remedy. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Equitable argues that section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," adequately addresses plaintiffs' claims, and thus, suit under section 502(a)(3) is unavailable. The cases cited by Equitable in support of this argument are inapposite, however, as none of them involved claims alleging violations of section 510.[1] Section 502(a)(1)(B) does not adequately address plaintiffs' claims because based on the alleged reclassification, plaintiffs no longer have rights "under the terms of the plan."

Equitable argues that I must dismiss plaintiffs' ERISA claim for failing first to exhaust administrative remedies under the Plan. While exhaustion of internal plan remedies is "ordinarily a useful prelude to a lawsuit," *Ames v. American National Can Co.*,

---

[1] The cases cited by Equitable, *Tolsen v. Avondale Indus., Inc.*, 141 F.3d 604 (5th Cir. 1998); *Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609 (6th Cir. 1998); and *Bowles v. Reade*, 198 F.3d 752 (9th Cir. 1999), all involved claims of breach of fiduciary duty, which the courts held were adequately remediable by other provisions of section 502(a) besides 502(a)(3).

170 F.3d 751, 756 (7th Cir. 1999), whether or not to require it is within my discretion. *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir. 1997). The reasons supporting exhaustion include (1) that the plan's own review process may resolve a certain number of disputes; (2) the facts and the administrator's interpretation of the plan may be clarified for the purposes of subsequent judicial review; and (3) an exhaustion requirement encourages private resolution of disputes. *Ames*, 170 F.3d at 756. Equitable pays lip service to these goals, but fails to explain adequately how exhaustion of internal Plan remedies would advance them. The issue in plaintiffs' ERISA claim is whether Equitable reclassified plaintiffs out of statutory employee status for the purpose of interfering with their attainment of rights under the Plan, in violation of ERISA. The Third, Ninth, and Tenth Circuits have created a distinction between claims for benefits, which require exhaustion, and claims based upon ERISA itself, which do not. *See Lindemann v. Mobil Oil Co.*, 79 F.3d 647, 649-50 (7th Cir. 1996) (citing *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1205) (10th Cir. 1990); *Zipf v. Am. Tel. & Tel. Co.*, 799 F.2d 889, 893 (3d Cir. 1986); *Amaro v. Cont'l Can Co.*, 724 F.2d 747 (9th Cir. 1984)). While the Seventh Circuit has not adopted this distinction, it has not rejected it either, reiterating that the decision to require exhaustion of remedies is within the discretion of the the district court judge. *Id.* at 650. Since Equitable has

not demonstrated how internal plan review would advance resolution of plaintiffs' claim of an ERISA violation, I will not dismiss plaintiffs' complaint for failure to exhaust administrative remedies.

## Count II: FICA

Count II of plaintiffs' complaint alleges that because Equitable determined that plaintiffs were not statutory employees under FICA, Equitable ceased withholding plaintiffs' share of the FICA tax and ceased paying the employer's share of the tax. Equitable argues that there is no private right of action under FICA to sue an employer for incorrect employment status classification.

Courts are split as to whether an employee may sue an employer for alleged violations of FICA. Plaintiffs point to two district court decisions finding an implied private right of action under FICA.[2] *Sanchez v. Overmyer*, 845 F. Supp. 1178, 1180-82 (N.D. Ohio 1993); *Ford v. Troyer*, 25 F. Supp. 2d 723, 726 (E.D. La. 1998). Equitable points to other decisions finding no implied right of action under FICA. *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 722-26 (11th Cir. 2002); *Paukstis v. Kenwood Golf & Country Club*, 241 F. Supp. 2d 551, 560-61 (D. Md. 2003); *White v. White Rose Food*, 62 F. Supp. 2d 878, 886-87 (E.D.N.Y. 1999);

---

[2] Plaintiffs do not argue that FICA contains an express private right of action.

7

*Salazar v. Brown*, 940 F. Supp. 160, 164-67 (W.D. Mich. 1996); *Spilky v. Helphand*, No. 91 CIV. 3045 (PKL), 1993 WL 159944, at *4-5 (S.D.N.Y. May 11, 1993); *Deleu v. Scaife*, 775 F. Supp. 712, 716-17 (S.D.N.Y. 1991); *DiGiovanni v. City of Rochester*, 680 F. Supp. 80, 82-83 (W.D.N.Y. 1988); *Turner v. Unification Church*, 473 F. Supp. 367, 377 (D.R.I. 1978). I find the line of cases cited by Equitable to be the more compelling, and agree that there is no implied private right of action under FICA.

There is a strong presumption against the creation of implied private rights of action. *Mallett v. Wisc. Div. of Vocational Rehab.*, 130 F.3d 1245, 1249 (7th Cir. 1997). The primary inquiry in determining whether a statute creates a private right of action is legislative intent. *Id.* (noting that the Supreme Court has retreated from the traditional four-part inquiry under *Cort v. Ash*, 422 U.S. 66 (1975), to focus primarily on the second part of that test, legislative intent). As noted by the Eleventh Circuit in *McDonald*:

> [T]here is no indication of any legislative intent, either explicit or implicit, to create a private right of action under FICA. Nothing in the language of the statute, its structure, or its legislative history provides any hint that Congress envisioned private lawsuits to enforce the provisions of this tax-collection law. In fact, the legislative history is completely devoid of any indication that private lawsuits under FICA were even briefly contemplated by Congress.

291 F.3d at 724. Plaintiffs disagree, pointing to one provision of FICA, 26 U.S.C. § 3102(b), entitled "Indemnification of employer," which states that "[e]very employer required so to deduct the tax

8

shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer." Plaintiffs cite *Sanchez*, in which the court addressed this language:

> The logical inquiry ... is against whom is the employer indemnified? The only possible answer is that this provision indemnifies an employer in an action brought by the employee.... If indemnification ... is provided, then by implication it must be assumed that Congress envisioned actions under FICA by employees against employers for incorrect amounts paid or complete failure to pay FICA taxes.

845 F. Supp. at 1181-82. This argument was presented to and rejected by the Eleventh Circuit in *McDonald*. 291 F.3d at 724-25 ("Section 3102(b) offers no reason to imply a private cause of action."). I, too, find the argument unconvincing. Section 3102(b) protects employers who properly deduct FICA taxes from an employee's wages against claims by the employee that the money withheld and used to pay taxes should have been paid to the employee as part of his salary. *Id.* It does not create a private right of action for failing to pay FICA taxes.

Count III: Breach of Contract

Count III of plaintiffs' complaint alleges breach of contract. Plaintiffs argue that compliance with FICA was an implied term of their contracts with Equitable, and that Equitable's alleged violation of FICA thus constitutes a breach. Illinois recognizes that "[i]n the absence of language to the contrary, the laws and statutes pertinent to a contract and in force at the time the

contract is executed are considered a part of that contract as though they were expressly incorporated therein." *Brandt v. Time Ins. Co.*, 704 N.E.2d 843, 850 (Ill. App. Ct. 1998).[3] *See also Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co.*, 111 F.2d 875, 878 (7th Cir. 1940) ("[C]ourts must read into every written contract the law governing the parties at the time the contract is made; that, too, necessarily enters into and forms a part of every contract as if fully and expressly incorporated therein."). It cannot be the case, however, that every employment contract necessarily includes the tax code as an implied term such that any violation of FICA by the employer would lend itself to a breach of contract claim. This would turn on its head the rule discussed above that there is no private right of action under FICA. Congress has established a comprehensive regulatory scheme that allows employees to seek relief from classification errors under FICA through such procedures as seeking a determination from the IRS regarding employment status and filing a claim with the IRS (or ultimately a lawsuit against the United States) for a refund of taxes allegedly overpaid based on misclassification. *McDonald*, 291 F.3d at 725-26. Allowing private lawsuits of FICA issues based on plaintiffs' theory that the tax code is an implied term of employment contracts would interfere with this administrative

---

[3] Neither party argues that anything other than Illinois substantive law applies to the breach of contract claim.

framework. *Id.* at 726. Plaintiffs' breach of contract claim is therefore dismissed.

Conclusion

Defendant's motion to dismiss is GRANTED IN PART AND DENIED IN PART. Counts II and III of plaintiffs' complaint are dismissed.

ENTER ORDER:

*Elaine E Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: July 3, 2003