IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRANCE BERGER and DONALD )
LAXTON, )
 )
Plaintiffs, )
 )
v. ) No. 03 C 125
 )
AXA NETWORK, LLC, and THE )
EQUITABLE LIFE ASSURANCE )
SOCIETY OF THE UNITED STATES, )
 )
Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Terry Berger and Donald Laxton are insurance agents who sold insurance for defendants AXA Network, LLC and The Equitable Life Assurance Society of the United States (collectively, "Equitable"). On January 7, 2003, Mr. Berger and Mr. Laxton filed a three-count complaint against Equitable, on behalf of themselves and a class of insurance agents similarly situated. They allege that a policy implemented by Equitable regarding classification of employees, for the purpose of determining benefits eligibility, based on sales violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461 (Count I), the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. §§ 3101-3128 (Count II), and constituted a breach of contract (Count III). On July 3, 2003, I dismissed Counts II and III of the complaint, and March 4, 2004, I granted

plaintiffs' motion for class certification. The parties have filed cross-motions for summary judgment.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As both parties' motions address the same claims and evidence, I will first consider Equitable's motion, construing the facts in the light most favorable to the plaintiffs.

Mr. Berger and Mr. Laxton began selling insurance as agents for Equitable in 1982 and 1984, respectively. Both sold insurance under contracts, known as 14th Edition Contracts, which specified that they were independent contractors, not employees of Equitable. Despite their classification as independent contractors, agents such as Mr. Berger and Mr. Laxton can be eligible for benefits, such as health or life insurance, if they are further classified as full-time life insurance salesmen ("FTLIS").[1] Prior to 1999, Equitable determined whether a agent was classified as FTLIS based

---

[1] The 14th Edition Contract provided that Equitable agents would have the opportunity to participate in Equitable's benefit plans "to the extent for which [they were] qualified."

2

on a form entitled "Questionnaire for Determining Classification for Purposes of the Old Age and Survivors Insurance Provisions of the Federal Social Security Act" ("FICA questionnaire"). The FICA questionnaire asked each agent, *inter alia*, whether he expected "that the solicitation of life insurance and annuity contracts, primarily for the Equitable, will be [his] *entire* business activity?" Both Mr. Berger and Mr. Laxton answered that question in the affirmative, and until 1999, Equitable relied on those answers for the purpose of qualifying both men as FTLIS, and thus eligible for benefits.

In the late 1990s, Equitable changed the method it used to determine if an agent was eligible for participation in its benefit plans. Beginning on January 1, 1999, Equitable would consider an agent to be classified as an FTLIS if the agent met one of three annual sales thresholds. Equitable claims that the change was motivated by a number of factors, including concern for compliance with the applicable tax and benefit laws, comparison with the practices of competitors, and cost-savings. Plaintiffs dispute that Equitable was motivated by anything other than cost-savings. The agents, including Mr. Berger and Mr. Laxton, were notified about this change in early 1998. Further, agents not meeting the new standards at mid-year, including Mr. Laxton, received a reminder of the new benefit rules. In 1999 and 2000, Mr. Berger and Mr. Laxton (respectively) failed to meet any of the annual

sales thresholds and were no longer classified as FTLIS by Equitable, therefore losing their eligibility to participate in Equitable's benefit plans.

I.

Equitable argues that plaintiffs' claims are time-barred by the applicable statute of limitations. ERISA does not itself include a statute of limitations for § 510 claims, requiring the application of the appropriate state's analogous statute of limitations. *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 546-47 (7th Cir. 1994). Doing so requires that I answer three questions: (1) which state's law should apply; (2) what is the most analogous cause of action in that state; and (3) when did the plaintiffs' cause of action accrue.

Concerning the first question - which state's law should apply - Equitable argues for New York law, while the plaintiffs argue in favor of Illinois law. Choice of law issues in federal cases, such as the one presented here, are generally determined by reference to federal common law principles. *See Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 926 F. Supp. 736, 739 (N.D. Ill. 1996) (noting that federal and Illinois common law look to the Restatement for Conflict of Laws for choice of law questions). Those principles look to see which state, among the possible choices, has the "most significant relationship to the occurrence and the parties." *Id.* The factors to be considered when

4

determining which state has the most significant relationship include "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Id.*

These factors weigh heavily in favor of New York. The injury alleged here is the loss of benefits eligibility by certain agents. That injury can be said to have occurred in many states, as the plaintiff class of agents here reside in many states, including New York, and less than five percent of them reside in Illinois. The conduct that caused the alleged injury is Equitable's change in how it classified an agent as FTLIS (or not). That change, and the deliberations leading to it, all occurred in New York. While the named plaintiffs do reside in Illinois, members of the class, as noted above, reside in many states, and only a small fraction are in Illinois. Equitable is incorporated in New York, and has its principal place of business there. Finally, if the relationship between Equitable and the agents is centered anywhere, it is centered in New York. The agents knew Equitable was incorporated and headquartered in New York when they signed contracts with it, and no other "center" for the relationship makes sense, given the wide dispersion of the agents throughout many states.

Further, the benefit plans in question provide that, where not preempted by the federal law of ERISA, New York law will apply. While plaintiffs argue, correctly, that ERISA is applicable to a § 510 claim, ERISA does not itself provide a statute of limitations. Plaintiffs argue that therefore I must look to federal law to determine the correct statute of limitations, but I have already done so, as explained above. New York state law shall supply the statute of limitations for this claim.

Given that New York's law is to supply the statute of limitations, the next question is: what is the most analogous New York cause of action. The Second Circuit has held that the most analogous New York cause of action to § 510 claims is a retaliatory discharge claim under New York's Workers' Compensation statute, which carries a two-year statute of limitations. *Sandberg v. KPMG Peat Marwick, LLP,* 111 F.3d 331, 336 (2nd Cir. 1997).

The final question is when plaintiffs' claims accrued, and therefore when the limitations period began. Plaintiffs argue that the denial of benefits to an agent constitutes the requisite act for a § 510 claim, therefore starting the limitations clock anew each year when agents who do not meet the new standards are denied benefits. Plaintiffs incorrectly identify the act underlying the § 510 claim. The alleged unlawful conduct here was Equitable's change in how it classified agents as FTLIS. Plaintiffs' claim accrued once Equitable had performed this allegedly unlawful act

and the plaintiffs discovered their injury allegedly resulting from the act. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1139 (7th Cir. 1992). That policy was communicated to the agents, including Mr. Berger and Mr. Laxton, in 1998, and became effective January 1, 1999. Plaintiffs did not file their claims until January 7, 2003, more than four years after the policy became effective. Under the two-year statute of limitations applicable in this case, plaintiffs' claims were untimely.

II.

Even if plaintiffs' claims were not time-barred, Equitable's motion for summary judgment would still prevail on the merits. Section 510 provides in relevant part that

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled [under the plan].

29 U.S.C. § 1140. The Seventh Circuit has held that § 510 is designed specifically to protect the employment relationship from being changed in a discriminatory or harmful way. *Deeming v. Amer. Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990).

Here, the employment relationship between Equitable and the plaintiffs has not been changed.[2] Before 1999, the plaintiffs were

---

[2] Plaintiffs argue that I have already decided this issue, but they misconstrue my opinion of July 2, 2003. That opinion granted in part and denied in part a motion to dismiss. For the purposes of that motion, I accepted all plaintiffs' allegations as true, and held that they had sufficiently alleged a claim under § 510. That

independent contractors, and that status remained the same after the 1999 change until Mr. Berger and Mr. Laxton ended their business relationship with Equitable. What has changed is the method by which Equitable determines whether an agent qualifies as an FTLIS and therefore for participation in Equitable's benefit plans. A FTLIS is defined as

> An individual whose entire or principal business activity is devoted to the solicitation of life insurance or annuity contracts, or both, primarily for one life insurance company.

26 C.F.R. § 31.3121(d)-1(d)(3)(ii). In the 1990s, Equitable became concerned that some agents were stating that they fit this definition, while actually selling products for a number of life insurance companies or even conducting other business altogether.

Prior to 1999, Equitable simply took an agent's word that the agent solicited life insurance contracts primarily for Equitable. Plaintiffs appear to argue that once Equitable had classified them as FTLIS, Equitable could not reclassify them regardless of whether the agents actually met the definition of FTLIS. The cases cited by plaintiffs as support for this proposition are distinguishable. *See Inter-Modal Rail Empls. Ass'n v. Atchison, Topeka & Santa Fe Ry.*, 520 U.S. 510 (1997); *Seaman v. Arvida Realty Sales*, 985 F.2d 543 (11th Cir. 1993), *cert. denied*, 510 U.S. 916 (1993). In those cases, the employer actually changed the status of the employees in question, terminating them when they refused to move from employee

---

opinion did not reach the merits of that claim.

status to independent contractor status. The only change here is that Equitable no longer accepts an agent's word for the purpose of FTLIS classification. The 1999 change implemented an objective standard for that determination, and does not affect the employment relationship in the manner required for an action under § 510.

Equitable's motion for summary judgment on Count I is granted; plaintiffs' motion for summary judgment is denied.

**ENTER ORDER:**

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated: May 6, 2005